## Moses S. Beyer and Joseph S. Yentes, Partners, v. Samuel Martin.

1. INSTRUCTION—*when refusal to give, warning against newspaper article, not error.* An instruction which warns the jury against being influenced by a newspaper article, belongs to that class of instructions termed "cautionary," and such refusal is not error unless it appears that the discretionary power of the court to give or refuse such instruction has been abused.

2. INSTRUCTION—*phrase "financial settlement" used in, not misleading.* This phrase, as used in an instruction, held, equivalent to "final settlement" and not misleading or prejudicial.

3. INSTRUCTION—*must not ignore theory of recovery.* An instruction is improper which ignores any theory upon which a recovery might properly be predicated in a cause.

Action of assumpsit. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1904. Affirmed. Opinion filed April 20, 1905.

KERRICK & BRACKEN, for appellants.

W. B. COONEY and W. R. CURRAN, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

May 17, 1900, appellants entered into a written contract with appellee, whereby appellee was to erect a saw mill upon timber land belonging to appellants, on the Illinois river bottom, and saw lumber from such timber and deliver the same upon the river bank. The price to be paid to appellee for such lumber was $7.50, $8.50 and $9 per thousand feet according to dimensions. Payment was to be made at the end of each month for lumber so sawed and delivered. In July following, the contract was supplemented by giving to appellee the right to saw all lumber on 1,500 acres, appellee to saw 600,000 feet per annum. This suit was brought by appellee to recover an amount claimed to be due him for lumber sawed and not paid for at the contract price and for damages sustained by him in not being permitted to perform his contract according to its terms.

There have been three trials of the case : the first resulting in a verdict in favor of appellee for $1,200, which was set aside by the trial court; the second, resulting in a verdict and judgment in favor of appellee for $814.75, which judgment was, upon appeal, reversed, and the cause remanded by the judgment of this court (109 Ill. App. 1); and the third resulting in a verdict and judgment in favor of appellee for §800, from which judgment this appeal is taken. The suit was instituted in Tazewell county and two trials had there. The venue was then changed upon the application of appellants to McLean county, where the case was last tried.

It is urged that the verdict is not supported by the evidence. There is a wide discrepancy in the evidence introduced in behalf of the contending parties, with reference to the quantity of lumber sawed by appellee; whether the same was edged up and free from bark as required by the contract; whether appellee had been paid in full, upon the occasion of an alleged final settlement with appellants, and whether appellee, to his injury, was prevented by appellants from continuing work under the contract. The record in the case is voluminous and it would unduly extend this opinion to set out and consider in detail the various items involved. The account as stated by the respective parties to the litigation varies very materially, appellants' account showing that they have over-paid appellee for work done under the contract and appellee's account showing that there is still due him from appellants the sum of $811.31.

Over the objections of appellants the court permitted appellee to offer in evidence as "Exhibit 8," page 5 of a certain book, identified by the witness Jackson, as containing a correct summary of the aggregate amount of lumber sawed by appellee under the contract. It was not a book of original entries, even upon the theory advanced by counsel for appellee that the amount of lumber cut daily by each sawyer was by him marked upon a slate and then transferred to a pencil memorandum book and so ultimately found its way into the book offered in evidence. Clearly

what appeared in the book did not purport to be a copy of the slate or of the pencil memorandum book, but merely a summary in the aggregate, of the quantity of lumber, in feet, sawed by appellee from "July 23 to Sept. 27," from "Sept. 27 to November 1" and "after November 1." If appellee's claim, as to the quantity of lumber sawed by him, was not supported by other and competent evidence in the case, we should not hesitate to say there was no evidence in the record upon that question. Appellee testified that he sawed under the contract "203,000 and some feet, of lumber" and about 4,000 feet of crating. The witness Jackson testified that 1,016 logs were sawed into lumber and that they produced about 200,000 feet. The witness Atkinson testified that he sawed about 100,000 feet. The witness Shrefler testified that he sawed about 3,000 feet. The witness Fleshman testified that he ran the saw two months, being about the same length of time as the witness Atkinson, who preceded him, operated it, and sawed 100,000 feet. We think the jury were warranted in finding from competent evidence in the record, that appellee produced something over 200,000 feet of lumber under his contract.

It is insisted that the court erroneously sustained objections to questions propounded by appellants' counsel to the witness Schertz for the purpose of ascertaining whether such witness had not agreed at or about the time he purchased the saw mill from appellee, to pay appellee for cutting and hauling the logs that were in the timber and mill yard at the time appellee ceased work under his contract, and whether witness had not in fact paid appellee therefor. Appellee claimed nothing from appellants in that regard, but as to the logs mentioned, only claimed damages from appellants, for loss of profits sustained in not being permitted to saw them into lumber. Appellee's objections to the questions were therefore properly sustained.

It was claimed by appellee that he was wrongfully compelled by appellants to quit his contract with them and thereby sustained damages to the amount of $3 per thousand feet, as profits he would have realized by sawing into

lumber the logs on hand at that time.  There is evidence
tending to show that the logs then on hand would scale
121,496 feet in lumber; that appellants had not settled with
appellee at the end of each month for lumber delivered as
provided by the contract; that appellant Beyer told Schertz,
that he had a mill to sell, referring to appellee's saw mill;
that Schertz subsequently offered appellee $100 for the
mill; that appellant Yentes then told appellee, that if he
(appellee) sawed the logs on hand he (Yentes) would not
pay for them; that Yentes asked appellee if he had sold the
mill yet, and upon appellee's replying that he had not, that
he had only been offered $100 for it, Yentes said to appel-
lee: "You had better sell; $100 is better than nothing and
if you don't sell I will close it out by the 9th of next
month;" that appellee at that time was ready, able and
willing to proceed under his contract.

We are not prepared to say that the foregoing evidence
does not tend to sustain appellee's contention that he was
wrongfully prevented from completing his contract with
appellant.  Aside from any reference by appellant Yentes
of his intention to close appellee out by a certain date, we
think his statement to appellee that he would not pay for
sawing logs then on hand, was a threat which operated to
induce appellee to dispose of the mill upon the best terms
obtainable.

By the first instruction given at the request of appellee,
the jury were told to "totally disregard any and all news-
paper statements concerning the case, if any have come
to your notice during the trials."  Appellants' criticism of
this instruction is that " it was probably taken by the jury
to mean that the appellants, or some one for them, had
procured newspaper statements to be made that were untrue
and prejudicial to appellee."  This instruction belongs to
a class, designated as "cautionary instructions," the giving
or refusing of which, is largely discretionary with the
trial court.  In this case we must assume that the trial
judge properly exercised such discretion in giving the in-
struction.  Instructions given in a case are not the instruc-

tions of the plaintiff or defendant, but the instructions of
the court upon the law applicable to the case. The 13th
instruction given at the request of appellee, informed the
jury that the burden was upon appellants to prove that a
financial settlement was made between the parties, upon
November 8, 1900. It appears from the evidence, that upon
that date appellee gave to appellants his receipt for $350,
and that the receipt contains the words "in full settlement
of all accounts up to date." Appellee testified that the
sum of $350 was paid to him in response to his letter to
appellants bearing date November 2, 1900, in which he
said: "The men are all going to quit if they don't get
their money. It will take about $350 to pay up." It was
contended by appellee that the words, " it will take about
$350 to pay up," referred to the amount necessary to pay
the men working for him and not to the amount due him
from appellants upon the contract. Appellee also testi-
fied that the words, " in full settlement of all accounts up
to date," did not appear in the receipt at the time he
signed it. The instruction related to these issues in the
case, and it is urged that the use of the words "financial
settlement" tended to mislead and confuse the jury. "Fi-
nancial settlement" must have been understood by the jury
as equivalent to a final settlement of the accounts between
the parties, and in that sense the words are not mislead-
ing or otherwise objectionable. The 14th instruction given
at the request of appellee is not susceptible of the con-
struction put upon it by appellants. The 2nd instruction
tendered by appellants and refused by the court, was
properly refused because it singles out one transaction as
decisive of appellee's right to recover. By the 3rd and 4th
instructions given at the request of appellants, the jury
were fully and fairly advised as to the law governing the
same issue.

While we are not entirely satisfied that appellee has
been damaged to the extent of the verdict and judgment
in the case, it is manifest from the verdict of three juries,
sanctioned by at least two trial judges, that he has sub-

stantial grounds for recovering damages against appellants, and we are not disposed upon this record to say that the verdict is so manifestly against the weight of the evidence as to justify us in setting it aside. The judgment of the Circuit Court is affirmed.

*Affirmed.*

MR. JUSTICE PUTERBAUGH took no part in the decision of this case.